**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Anthony Kinte Webb, | No.  CV 16-00198-TUC-DCB |
| Plaintiff, | |
| vs. | **ORDER** |
| Tucson Police Department, et al., | |
| Defendants. | |

Plaintiff Anthony Kinte Webb, who is currently in custody of the Texas Department of Criminal Justice in Angleton, Texas, brought this pro se civil rights action under 42 U.S.C. § 1983 against Tucson Police Department Officer Paul South and Pima County Sheriff Mark Napier.[1]  (Docs. 17, 39.)  Before the Court are the following motions:

> · South's Motion for Summary Judgment (Doc. 21);
> · Webb's Motion for Summary Judgment (Doc. 26);
> · Sheriff Napier's Cross-Motion for Summary Judgment (Doc. 33);
> · South's Motion for Ruling (Doc. 42);
> · South's Motion for Extension to File Video (Doc. 44); and
> · Sheriff Napier's Motion for Ruling (Doc. 45).

---

[1] Mark Napier, the current Pima County Sheriff, was substituted as a defendant in place of former Sheriff Christopher Nanos.  (Doc. 38.)

The Court will deny Webb's Motion for Summary Judgment, grant South's and Sheriff Napier's Motions, and terminate the action.

## I.      Background

In Count I of his First Amended Complaint, Webb alleged that South violated his Fourth Amendment rights when South stopped him outside of a Walgreens, accused him of trespassing, demanded identification, and ran a warrant check without probable cause. (Doc. 17 at 5.)  In Count IV, Webb alleged that the Sheriff violated Webb's due process rights when he extradited Webb while Webb was challenging his unlawful detention by writ of habeas corpus.  (*Id.* at 6.)  The remaining Counts were dismissed on screening. (Doc. 18.)

South moves for summary judgment on the grounds that (1) Webb's claim is barred by collateral estoppel and *Heck v. Humphrey*, 512 U.S. 477 (1994); (2) South's conduct did not violate the Constitution; and (3) South is entitled to qualified immunity. (Doc. 21.)

Webb seeks summary judgment on the grounds that (1) South's conduct violated the Fourth Amendment, (2) the Sheriff's conduct violated Webb's right to due process, (3) neither Defendant is entitled to qualified immunity, and (4) Webb was denied the right to litigate the issues due to the unlawful extradition.  (Doc. 26.)

In his response to Webb's Motion, Sheriff Napier cross-moves for summary judgment, arguing that he did not deprive Webb of any right and the extradition was lawful. (Doc. 33.)

Upon the filing of South's Motion and Sheriff's Napier's Cross-Motion, the Court issued Orders with the Notice required under *Rand v. Rowland*, 154 F.3d 952, 960 (9th Cir. 1998), which informed Webb of the requirements of Federal Rule of Civil Procedure 56. (Docs. 25, 37.)

After the parties briefed the summary judgment motions, the Court directed South to file the Walgreens camera footage, which shows the encounter between Webb and South and which was entered as an exhibit in Webb's state court proceedings.  (Doc. 43.)

*See Scott v. Harris*, 550 U.S. 372, 380–81 (2007) (a court may properly consider video evidence in ruling on a motion for summary judgment and should view the facts "in the light depicted by the videotape"); *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006) (courts may take judicial notice of court filings and other matters of public record). South moved for an extension of time to file the video evidence and, shortly thereafter, South submitted a DVD of the camera footage. (Docs. 44, 46–47.) The Court will grant South's Motion for Extension.

## II. Summary Judgment Standard

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The movant bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, if any, that it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323.

If the movant fails to carry its initial burden of production, the nonmovant need not produce anything. *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Co., Inc.*, 210 F.3d 1099, 1102–03 (9th Cir. 2000). But if the movant meets its initial responsibility, the burden then shifts to the nonmovant to demonstrate the existence of a factual dispute and that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 250 (1986); *see Triton Energy Corp. v. Square D. Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995). The nonmovant need not establish a material issue of fact conclusively in its favor, *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288–89 (1968); however, it must "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal citation omitted); *see* Fed. R. Civ. P. 56(c)(1).

At summary judgment, the judge's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. In its analysis, the court does not make credibility determinations; it must believe the nonmovant's evidence and draw all inferences in the nonmovant's favor. *Id.* at 255; *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). The court need consider only the cited materials, but it may consider any other materials in the record. Fed. R. Civ. P. 56(c)(3).

**III.  Relevant Facts**

The Court recites the facts, which are either undisputed, alleged by the Plaintiff, or as seen on the video. On December 8, 2015, South was driving down 6th Avenue in Tucson when he saw Webb sitting and eating something near a "No Trespassing/No Loitering" sign on the side of a Walgreens. (Doc. 22 ¶ 1.) Webb was sitting with a bag on the curb of the sidewalk that borders the Walgreens; this sidewalk extends about 10 feet from the store building to the parking lot. (Doc. 47, Video, 11:11:11.) South drove up and parked his police vehicle at an angle across two parking spaces about four feet in front of Webb. (*Id.*, 11:11:11–17.) South got out of his police vehicle and took a few steps up to Webb and pointed at the "No Trespassing" sign. (*Id.*, 11:11:18–28; Doc. 17 at 5 & Attach., Mot. to Suppress Hr'g Tr. 18:2–21, Jan. 11, 2016 (Doc. 17 at 25).) South started talking to Webb and brought Webb's attention to the sign. (Doc. 47, Video, 11:11:18-28.) Webb told South that he was not trespassing, he was eating. (Doc. 17, Attach., Mot. to Suppress Hr'g Tr. 11:1-3, Jan. 11, 2016 (Doc. 17 at ECF18).) South said "that is fine," and, according to Webb, South "demanded" Webb's name and date of birth. (*Id.*; Doc. 17 at 3.) Webb provided his name and date of birth to South, who wrote the information down and then went to his vehicle to conduct a records check. (Doc. 17, Attach., Mot. to Suppress Hr'g Tr. 11-12, Jan. 11, 2016 (Doc. 17 at ECF18-19).)[2]

---

[2] Doc. 17: Amended Complaint, with Attach., Mot. to Suppress Hr'g Tr., Jan. 11, 2016; Doc. 47, Video has no audio; Doc. 22: South's MSJ, SOF.

The records check revealed a felony warrant for Webb out of Texas. (Doc. 22 ¶ 9.) South went back to Webb and asked him for a picture ID or social security number, and Webb provided further identifying information. (*Id.* ¶¶ 9–10.) A sergeant came to the scene to assist South in confirming the warrant. (*Id.* ¶ 11.) After confirming the warrant, South arrested Webb pursuant to the warrant; Webb was not arrested for trespassing or loitering. (*Id.* ¶¶ 11–12; Doc. 17, Attach., Mot. to Suppress Hr'g Tr. 21:8–9 (Doc. 17 at 28).)

Webb was booked on December 8, 2015, and the following day, an Interim Complaint was filed in Pima County Superior Court against him for the out-of-state felony warrant. No. FW20150238-001, Interim Compl., Dec. 9, 2017.[3] On December 29, 2015, Webb filed a Motion to Suppress Evidence and Dismiss, arguing that South had no reasonable suspicion or probable cause to instigate an investigative stop and that the detention of Webb violated the Fourth Amendment. *Id.*, Memo. at 4–9, Dec. 29, 2015. Webb contended that, as a result, his statement to South, in which he provided his name, must be suppressed as fruit of an illegal detention, and the fugitive warrant proceeding should be dismissed. *Id.* at 6–9.

On January 11, 2016, Superior Court Judge Lee Ann Roads held a hearing on the Motion to Suppress Evidence and Dismiss. *Id.*, Minute Entry, Mot. to Suppress Hr'g, Jan. 12, 2016. At this hearing, South provided testimony, and exhibits were admitted, including the Walgreens camera footage, and Judge Roads set another hearing for January 14, 2016. *Id.* (Doc. 17, Attach., Mot. to Suppress Hr'g Tr. 22:5–6, 22:20–22, 26:15–20 (Doc. 17 at 29, 33).) At the January 14, 2016 hearing, Judge Roads issued her ruling on the Motion, finding that the detention was unreasonable and any evidence gained from that detention would be suppressed. No. FW20150238-001, Minute Entry, Mot. to Suppress, Jan. 20, 2016. But Judge Roads stated that a person's name—obtained

---

[3] *See Superior Court Electronic Documents Online*, http://www.agave.cosc.pima.gov/AgavePartners/ (enter Webb, Anthony; click Name; then click Search; and then click on case number FW20150238) (last visited Sept. 12, 2017). *See Reyn's Pasta Bella, LLC*, 442 F.3d at 746 n.6.

for the purpose of checking outstanding warrants—is not suppressible, and she therefore denied Webb's Motion to Suppress Evidence and Dismiss and set a date for the fugitive warrant review hearing. *Id.*

On March 8, 2017, the Superior Court held Webb's fugitive warrant review hearing. *Id.*, Minute Entry, Fugitive Warrant Review Hr'g, March 8, 2016. At this hearing, Webb indicated that he had filed a Special Action with the Court of Appeals and asked that the fugitive warrant proceedings be stayed. *Id.* The Court denied the request for a stay. *Id.* Webb also indicated his intent to file a petition for writ of habeas corpus, and the Court set a March 23, 2016 deadline for filing the habeas petition. *Id.*

On March 23, 2016, Webb filed a petition for writ of habeas corpus, which challenged his extradition. *Id.*, Pet. for Writ of Habeas Corpus, March 23, 2016.

On March 29, 2016, a hearing on the petition was held. *Id.*, Minute Entry, Habeas Corpus Hr'g, March 31, 2016. The Superior Court found that the warrant was valid and that Webb was the individual wanted by the demanding state, and the Superior Court denied the petition. *Id.* The Superior Court also denied Webb's oral motion to stay execution of the warrant. *Id.*

On March 30, 2016, Webb filed a written Motion to Stay the warrant process and permit him to appeal the outcome of the habeas proceeding. *Id.*, Mot. to Stay, March 30, 2016. Also on March 30, 2016, Webb filed a Notice of Appeal from the denial of habeas relief. *Id.*, Notice of Appeal, March 30, 2016.

On April 7, 2016, the County Sheriff notified Texas that Webb was ready for transport. (Doc. 22 ¶ 15.)

On April 8, 2016, the Superior Court denied Webb's Motion to Stay. No. FW20150238-001, Ruling, April 8, 2016.

On April 12, 2016, Webb was extradited. (Doc. 22 ¶ 11.)

On April 20, 2016, the State moved to dismiss the fugitive complaint and order against Webb on the ground that the warrant was served and Webb was returned to the demanding state. (Doc. 19-1 at 126.) On April 21, 2016, the Superior Court granted the

motion and dismissed the fugitive complaint. (*Id.* at 128.) That same day, the Court of Appeals dismissed Webb's appeal. (*Id.* at 129.)

## IV.   Count I

### A.   Collateral Estoppel

"Collateral estoppel, or issue preclusion, bars the relitigation of issues actually adjudicated in previous litigation between the same parties." *Kamilche Co. v. United States*, 53 F.3d 1059, 1062 (9th Cir. 1995). South argues that the issues raised in Webb's First Amended Complaint are the same as those raised in his Motion to Suppress and Dismiss and his writ of habeas corpus; thus, under the doctrine of collateral estoppel Webb cannot re-argue those issues that he lost in state court, including "that his arrest and detention *after the discovery of the fugitive arrest warrant* violated any constitutional right." (Doc. 21 at 5, 8–9 (emphasis added).) According to South, because Webb's claim that his arrest and detention were unlawful is inconsistent with the state court's determination, he is barred from bringing this Fourth Amendment claim. (*Id.* at 9.)

Webb's Fourth Amendment claim is not based on his arrest and detention after the discovery of the out-of-state arrest warrant. Rather, Webb alleged that South stopped him, "accused him of trespassing[,] demanded identification, and then ran a warrant check." (Doc. 17 at 3.) Webb alleged that South regularly uses this tactic of "approaching . . . people, accuses them of trespassing, loitering or whatever and ask[s] them for their name" without probable cause, and, in Webb's case, it constituted an illegal detention and seizure. (*Id.*) Thus, Webb's claim is that South stopped and detained him without probable cause or reasonable suspicion. There are no allegations that South's conduct *after* the discovery of the fugitive arrest warrant was unlawful. (*See id.*) Consequently, South's collateral estoppel argument as to a claim concerning the arrest and detention after discovery of the arrest warrant is of no moment.

That does not end the collateral estoppel analysis, however, because the Fourth Amendment claim set forth in Webb's First Amended Complaint in fact raises the same issue that was raised in the Motion to Suppress Evidence and Dismiss—whether South's

initial stop and detention of Webb was unlawful. As stated, Judge Roads ruled that the detention was unreasonable. No. FW20150238, Minute Entry, Mot. to Suppress, Jan. 20, 2016. In his Statement of Facts in support of his Motion for Summary Judgment, Webb relies on this ruling to argue that his Fourth Amendment rights were violated. (Doc. 27 at 3.)[4]

"Offensive use of collateral estoppel occurs when a plaintiff seeks to foreclose a defendant from relitigating an issue the defendant has previously litigated unsuccessfully in another action against the same or a different party." *United States v. Mendoza*, 464 U.S. 154, 159 n.4 (1984). Offensive collateral estoppel is applicable in § 1983 actions as to issues previously decided in state court criminal and civil proceedings, provided that the same effect is given in state court. *See Allen v. McCurry*, 449 U.S. 90, 104 (1980). Thus, "[s]tate law governs the doctrine of issue preclusion in federal courts." *Jacobo-Esquivel v. Hooker*, No. No. CV-14-01781-PHX-GMS, 2016 WL 524655, at *4 (D. Ariz. 2016) (quoting *Heath v. Cast*, 813 F.2d 254, 258 (9th Cir. 1987)). "Under Arizona law, 'collateral estoppel does not apply [where] the suppression ruling was interlocutory [and] not final.'" *Jacobo-Esquivel*, 2016 WL 524655, at *4 (quoting *State v. Greenberg*, 343 P.3d 462, 469 (Ariz. Ct. App. 2015)).

Here, Judge Road's ruling on the Motion to Suppress Evidence and Dismiss was interlocutory—it could have been appealed. Therefore, the ruling is not binding on this

---

[4] In his Statement of Facts, Webb presents his hand-written copy of portions from what he identifies as the transcript of the January 14, 2016 hearing before Judge Roads. (Doc. 27.) In response to this filing, South asserts that he is unaware of any hearing that occurred on January 14, 2016. (Doc. 32 at 1.) As set forth above, the state court records document the January 14, 2016 hearing. No. FW20150238, Minute Entries, Jan. 12 and 20, 2016. South's Motion relied on the state court record, and South submitted a copy of the Minute Entry documenting the January 14, 2016 hearing; thus, counsel should have been aware of the evidence to which Webb cited. (Doc. 22, Ex. C.) Regardless, the Court need not rely on the transcript of the January 14, 2016 hearing to ascertain Judge Road's ruling on the initial stop and detention because the Minute Entry documents her finding that "the detention was unreasonable and any evidence that was gained from that would be suppressible." (*Id.*)

Court, and collateral estoppel does not apply. *See Jacobo-Esquivel*, 2016 WL 524655, at *4 (finding that the Arizona state court judge's grant of a motion to suppress was not binding on the federal court in the plaintiff's subsequent § 1983 action alleging unlawful search and seizure in violation of the Fourth Amendment); *cf. Heath*, 813 F.2d at 258 (under California law, a ruling on a suppression motion is not a final judgment for purposes of collateral estoppel because it is a preliminary evidentiary determination independent of the real question in the proceedings—the accused's guilt).

## B. *Heck*

Under *Heck v. Humphrey*, a state prisoner's claim for damages is not cognizable under § 1983 if a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence, unless the prisoner can demonstrate that the conviction or sentence has previously been invalidated. 512 U.S. at 487.

South argues that Webb's Fourth Amendment claim is barred by *Heck* because Webb "has not demonstrated that the underlying criminal action [against] him was overturned, and *his claim now that his arrest and detention were unlawful* is inconsistent with the results of the suppression hearing and habeas corpus determination in the Arizona criminal proceeding." (Doc. 21 at 8–9 (emphasis added).) Like his collateral estoppel argument above, South directs his *Heck* argument to a claim that does not exist. South does not present any legal argument as to whether *Heck* would apply to Webb's claim that South's initial stop and detention were unlawful.[5]

---

[5] South argues that Webb conceded that his claim was *Heck* barred. (Doc. 31 at 2–3, citing Doc. 26 at 4.) But the statements in Webb's Motion for Summary Judgment to which South cites appear to relate to Webb's due process claim against the Sheriff. Webb asserts that Judge Roads found the seizure and detention to be unlawful and, thereafter, Webb did not get an opportunity to litigate this issue due to the unlawful extradition by the Sheriff. (Doc. 26 at 4.) Webb states that he should be allowed to refile a § 1983 complaint after satisfying the *Heck* standard, and then he concludes that he is entitled to summary judgment. (*Id.*) At the least, Webb has conflated his two claims, and it is not surprising or unreasonable that Webb, as a pro se litigant, would be unfamiliar with the *Heck*-bar doctrine and its application. For this reason, and because South did not address *Heck*'s application to the Fourth Amendment claim at issue, the Court does not recognize any concession on Webb's part.

- 9 -

Notably, in *Heck*, the Supreme Court recognized that, with respect to § 1983 suits alleging Fourth Amendment violations, "[b]ecause of doctrines like independent source and inevitable discovery, and especially harmless error, such a § 1983 action, even if successful, would not *necessarily* imply that the plaintiff's conviction was unlawful." 512 U.S. at 487 n.7. Despite this qualification, the Ninth Circuit has generally held that Fourth Amendment claims are not exempt from the *Heck* bar. *See Szajer v. City of L.A.*, 632 F.3d 607, 611 (9th Cir. 2011) (citing *Whitaker v. Garcetti*, 486 F.3d 572, 583–84 (9th Cir. 2007), and *Harvey v. Waldron*, 210 F.3d 1008, 1015 (9th Cir. 2000), *overruled in part on other grounds by Wallace v. Kato*, 549 U.S. 384, 393–94 (2007)). But these cases concerned attempted challenges to the seizure of evidence upon which the plaintiffs' convictions were based. *See Szajer*, 632 F.3d at 612 (the plaintiffs challenged the search of their gun shop only, but because the search of the gun shop was based on the same warrant used for the search of their residence—which resulted in evidence that led to convictions—the claim was *Heck* barred because success on the their §1983 claim would necessarily imply the invalidity of the warrant and their convictions); *Whitaker*, 486 F.3d at 577, 584 (the plaintiffs "challenge the search and seizure of the evidence upon which their criminal charges and convictions are based" and are therefore *Heck* barred); *Harvey*, 210 F.3d at 1015–16 (because the evidence seized in the alleged unlawful search was essential element of the crime charged, a §1983 claim challenging the legality of the search and resulting seizure of this evidence would implicate the validity of the conviction and it is therefore not cognizable under *Heck*). As such, those cases are not analogous to the instant case.

In *Utah v. Strieff*, the Supreme Court held that despite an unlawful stop by the officer, because the officer then discovered an arrest warrant and lawfully arrested Strieff pursuant to that warrant, the evidence ultimately discovered was admissible; "discovery of the arrest warrant attenuated the connection between the unlawful stop and the evidence seized from Strieff incident to arrest." ___ U.S. ____, 136 S. Ct. 2056, 2063–64

(2016).[6] The Ninth Circuit has held that an unlawful seizure is not retroactively rendered "reasonable" under the Fourth Amendment based on the discovery, after-the-fact, of an arrest warrant. *Moreno v. Baca*, 431 F.3d 633, 639–41 (9th Cir. 2005). In light of this case law, the fact that South discovered an out-of-state felony warrant did not turn the alleged initial unlawful stop into a lawful one. And if the initial stop and seizure is determined to have violated Webb's Fourth Amendment rights, it would not necessarily imply the invalidity of Webb's habeas proceedings or extradition because those proceedings were pursuant to the valid arrest based on the out-of-state felony warrant. Accordingly, Webb's Fourth Amendment claim would not be *Heck* barred.

### C. Fourth Amendment Analysis

Because Webb's claim is not barred by collateral estoppel or *Heck*, the Court proceeds with the Fourth Amendment analysis.

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures[.]" U.S. Const. amend. IV. "No right is held more sacred, or is more carefully guarded, by the common law, than the right of every individual to the possession and control of his own person, free from all restraint or interference of others, unless by clear and unquestionable authority of law." *Terry v. Ohio*, 392 U.S. 1, 9 (1968) (quotation omitted). The inquiry into whether an officer violated a person's Fourth Amendment rights proceeds in two steps. *Martinez v. City of Auburn*, No. C06-0447-JCC, 2007 WL 2005584, at *4 (W.D. Wash. July 9, 2007). First, a court must determine whether there is a "seizure," and, if so, the court must determine whether there was reasonable suspicion

---

[6] *Strieff* did not address *Heck*; rather, it addressed a motion to suppress evidence based on an alleged Fourth Amendment violation. 136 S. Ct. at 2064. There, an officer detained Strieff after seeing him come out of a house that the officer believed was involved in narcotics activity. *Id.* at 2059. The officer asked Strieff for identification, which Strieff produced, and, after the officer ran a check of Strieff's information, it discovered that Strieff had an outstanding arrest warrant. *Id.* at 2060. Pursuant to this arrest warrant, Strieff was arrested and then searched, and drugs were found on his person. *Id.* The Supreme Court held that because the warrant was valid, the officer had an obligation to arrest Strieff and the subsequent search was lawful. *Id.* at 2062–63.

to support the seizure. *See United States v. Arvizu*, 534 U.S. 266, 273 (2002); *Brower v. Cnty. of Inyo*, 489 U.S. 593, 596 (1989).

"An exchange between officers and a person is either a consensual encounter, which is not a seizure, or an investigative stop (a *Terry* stop), which is a seizure." *Jacobo-Esquivel*, 2016 WL 524655, at *5. A seizure occurs when a "police officer accosts an individual and restrains his freedom to walk away." *Terry*, 392 U.S. at 16. "The appropriate inquiry is whether a reasonable person would feel free to decline the officers' requests or otherwise terminate the encounter." *Bostick*, 501 U.S. at 436. Only when an officer, "by means of physical force or show of authority, has in some way restrained the liberty of a citizen" does a seizure occur. *Mendenhall*, 446 U.S. at 552. "[L]aw enforcement officers do not violate the Fourth Amendment by merely approaching an individual on the street or in another public place, by asking him if he is willing to answer some questions, [or] by putting questions to him if the person is willing to listen." *Florida v. Royer*, 460 U.S. 491, 497 (1983). "So long as a reasonable person would feel free to disregard the police and go about his business, the encounter is consensual and no reasonable suspicion is required." *Florida v. Bostick*, 501 U.S. 429, 434 (1991) (internal quotations and citation omitted).

The seizure inquiry is a factual one that depends upon the totality of the circumstances. *Morgan v. Woessner*, 997 F.2d 1244, 1253 (9th Cir. 1993). In determining whether an encounter constitutes a seizure, courts consider "(1) the time and place of the encounter, (2) the number of officers on the scene; (3) use of language or tone indicating that compliance with the officer's request might be compelled; (4) intimidating movements or authoritative manner; (5) physical touching or application of force; (6) whether the officer displayed a weapon or was in uniform; (7) restriction of the detainee's movements; and (8) whether the detainee was advised of his right to terminate the encounter." *United States v. Gallinger*, 227 F. Supp. 3d 1163, 1167 (D. Idaho 2017) (citations omitted).

South maintains that he was entitled to approach Webb and ask him questions, Webb was free to refuse to answer his questions or leave, and Webb chose to give his name when asked. (Doc. 21 at 9.) South further claims that he is entitled to qualified immunity on this claim. (*Id.* at 10.) Webb argues that South used the patrol car to block him and then demanded his name, and he was not free to leave. (Doc. 26 at 1; Doc. 17 at 3.) Webb contends that qualified immunity is not warranted. (Doc. 26 at 3.)

The evidence shows that South was alone when he approached Webb and that the encounter occurred in the Walgreens parking lot, which was in public view, in the middle of the day. *See United States v. Weaver*, 282 F.3d 302, 312 (4th Cir. 2002) (finding that "encounter [that] occurred in a public parking lot in the middle of the day" was consensual). Further, at no point did South brandish his weapon, and he did not touch Webb or make any physical contact until the out-of-state warrant was confirmed and the arrest was effected. *See United States v. Orman*, 486 F.3d 1170, 1175 (9th Cir. 2007) (in finding that the encounter was consensual, the court considered that the defendant officer never drew his gun and the encounter occurred in a public setting). Based on where South parked his police vehicle, Webb could have easily walked in either direction down the wide sidewalk or he could have walked away across the parking lot by going around or to the side of the police vehicle. (*See* Doc. 47, Video, 11:11:11–17.) *See United States v. $25,000 U.S. Currency*, 853 F.2d 1501, 1504–05 (9th Cir. 1988) (where a person claimed that he was seized when officers "surrounded" him in airport concourse, the Ninth Circuit stated that neither a concrete pillar by which the person stood, nor officers standing four to five feet from the person prevented him from leaving the area because he could have easily walked around the pillar and the officers); *cf. United States v. Washington*, 490 F.3d 765, 773 (9th Cir. 2007) ("blocking an individual's path or otherwise intercepting him to prevent his progress in any way is a consideration of great, and probably decisive, significance in favor of finding a seizure") (internal quotation and citation omitted). These facts support a finding that the encounter was consensual.

While South did not tell Webb he was <u>not free</u> to leave, he also did not inform Webb that he <u>was free</u> to leave or terminate the encounter. Some courts have found that the failure to expressly tell an individual that he or she is free to leave is a significant factor in support of finding a seizure. *See Bostick*, 501 U.S. at 432) (finding it significant that officers told the defendant that he could refuse consent); *Gallinger*, 227 F. Supp. 3d at 1168 (the fact that Gallinger was not told he was free to terminate the encounter supported finding of a seizure). Certainly, it would behoove any officer to inform an individual that he or she is free to leave if the officer intends an encounter to be consensual. But this factor, by itself, is not dispositive. In *Mendenhall*, the Supreme Court found that the defendant officers' failure to tell the individual that she was free to decline to cooperate with their inquiry did not affect the conclusion that no seizure occurred. 446 U.S. at 555. And the Ninth Circuit has held that an officer's failure to explicitly tell an individual that he or she is free to leave does not render the encounter a seizure. *Orman*, 486 F.3d at 1176.

Finally, the crux of Webb's seizure claim is the fact that when South exited his police vehicle and approached Webb, he demanded that Webb provide his name and date of birth. In making seizure inquires, courts have distinguished between *asking* a person for identification and *demanding* identification, because demanding such information coveys the message that a response is required and thereby exhibits a show of authority. *See Mendenhall*, 446 U.S. at 555 (in finding that the encounter did not constitute a seizure, the Supreme Court noted that the defendant agents "requested, but did not demand to see the [plaintiff's] identification"); *Bostick*, 501 U.S. at 434–35 (officers may ask to examine the individual's identification "so long as the officers do not convey a message that compliance with their requests is required"); *see also United States v. Winsor*, 846 F.2d 1569, 1573 n.3 (9th Cir. 1988) (where the police demanded that an individual open a door, there is no consent as a matter of law); *Gallinger*, 227 F. Supp. 3d at 1168 (even if phrased as a question rather than a command, an officer's request can convey a clear expression of authority).

Although Webb states that he did not feel that he was free to leave, "the test for existence of a 'show of authority' is an objective one: not whether the citizen perceived that he was being ordered to restrict his movement, but whether the officer's words and actions would have conveyed that to a reasonable person." *California v. Hodari D.*, 499 U.S. 621, 628 (1991). The video reflects no physical show of authority by South. But for Webb's characterization of South's inquiry as an alleged demand, there are no other facts or allegations to show that South communicated to Webb that he was not free to leave. Thus, when considering the totality of the circumstances, South's demand for Webb's name and date of birth does not render the encounter a seizure. *See Berry v. City of Grants Pass*, No. Civ. 04-3107-CO, 2006 WL 3227891, at *11 (D. Ore. Nov. 2, 2006) (finding that in the specific circumstances, even where the officer "demanded" or "ordered" that plaintiff take certain actions, that did not affect the court's finding that a reasonable person would have felt free to leave the encounter). Because there was no seizure, the Court need not proceed to the second step of the Fourth Amendment analysis, which addresses whether the encounter was supported by reasonable suspicion. *See Orman*, 486 F.3d at 1176 n.7.

In the alternative, to the extent that South's demand for a name and date of birth infringed on Webb's Fourth Amendment rights, South is entitled to qualified immunity. Government officials enjoy qualified immunity from civil damages unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The qualified immunity doctrine "gives government officials breathing room to make reasonable but mistaken judgments about open legal questions," and it protects "all but the plainly incompetent or those who knowingly violate the law." *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011) (internal quotation omitted). In deciding if qualified immunity applies, the Court must determine: (1) whether the facts alleged show the defendant's conduct violated a constitutional right; and (2) whether that right was clearly established at the time of the violation. *Pearson v. Callahan*, 555 U.S. 223, 230-32, 235-36 (2009)

(courts may address either prong first depending on the circumstances in the particular case).

For a right to be clearly established there does not have to be a case directly on point; however, "'existing precedent must have placed the statutory or constitutional question beyond debate.'" *White v. Pauly*, ___ U.S. ____, 137 S. Ct. 548, 551 (2017) (quoting *Mullenix v. Luna*, 577 U.S. ____, ____, 136 S. Ct. at 308 (2017)). Clearly established law "must be particularized to the facts of the case," and "should not be defined at a high level of generality." *White*, 137 S. Ct. at 552 (quotation and citation omitted). In *White*, the Supreme Court reversed a denial of qualified immunity after finding that the circuit court's "clearly established law" analysis was improper because the court did not identify a case where an officer acting under similar circumstances as the defendant officer was held to have violated the Fourth Amendment. *Id.*

As stated above, there is case law establishing that officers can ask for identification so long as they do not convey a message that compliance is required. Many of the cases addressing seizures focus on vehicle stops, where checking driver's license identification is a routine inquiry since drivers must be licensed. *See e.g.*, *Rodriguez v. United States*, 135 S. Ct. 1609, 1615 (2015), *see also*: *See Mendenhall*, 446 U.S. at 547–48 (agents suspected that passenger who departed plane was unlawfully carrying narcotics and initiated an encounter in airport concourse); *Bostick*, 501 U.S. at 431–32 (after officers discovered cocaine in a suitcase, they initiated an encounter with a suspect on a bus); *Winsor*, 846 F.2d at 1571 (police were searching for bank robber in a hotel and demanded that hotel resident open the door). The Court cannot identify a case where an officer was found to have violated the Fourth Amendment by demanding identification information from a person suspected of trespassing. Further, as cited above, a least one district court in this circuit has found that there was no seizure even where police officers "demanded" that a person take certain actions. *Berry*, 2006 WL 3227891, at *11.

- 16 -

For the above reasons, the Court finds that South is entitled to summary judgment on the Fourth Amendment claim in Count I, and his Motion for Summary Judgment will be granted.

## V. Count IV

### A. Governing Standard

The Constitution requires states to extradite a fugitive, charged with a crime, to the demanding state that has jurisdiction of the crime. U.S. Const., Art. IV, § 2, cl. 2. This constitutional provision is implemented by federal statute, 18 U.S.C. § 3182. Where adopted, the Uniform Criminal Extradition Act also governs states' extradition procedures. *See Michigan v. Doran*, 439 U.S. 282, 288–89 (1978). The federal and state statutes establish procedural safeguards to ensure that evidence is sufficient to detain and deliver the accused for trial in the demanding state. *See Smith v. Idaho*, 373 F.2d 149, 155 (9th Cir. 1967). Denial of these procedural safeguards states a claim under § 1983. *See Draper v. Coombs*, 792 F.2d 915, 921 (9th Cir. 1986).

Arizona has adopted the Uniform Criminal Extradition Act. Ariz. Rev. Stat. § 13-3841, et seq. The Arizona statute requires the governor to arrest and deliver to another state any person charged in that state with a felony or other crime who has fled from justice and is found in Arizona. Ariz. Rev. Stat. § 13-3842. Under § 13-3850, an accused may not be delivered to the demanding state unless he has been informed of the demand and the crime charged against him. The accused also has the right to demand legal counsel and, if he seeks to test the legality of his arrest, he must be taken before a judge and allowed a reasonable time in which to apply for a writ of habeas corpus. Ariz. Rev. Stat. § 13-3850. Upon the filing of a writ, notice of the hearing on the writ must be given to the Arizona prosecutor and to an agent of the demanding state. *Id.*

/////

/////

/////

/////

**B.     Discussion**

There is no dispute as to the relevant facts and proceedings related to Webb's petition for writ of habeas corpus and the timing of his extradition.[7]  A review of the specific procedural background is as follows:

Following Judge Road's January 14, 2016 ruling on the Motion to Suppress and Dismiss, Webb filed a Special Action in the Court of Appeals.  *See* No. FW20150238-001, Minute Entry, Fugitive Warrant Review Hr'g, March 8, 2016 (documenting that defense counsel advised the Court Webb had filed a Special Action with the Court of Appeals).[8]

On March 8, 2016, during the fugitive warrant hearing, Webb indicated his intent to challenge the legality of the warrant.  *Id.*

On March 23, 2016, Webb filed his petition for writ of habeas corpus, arguing that the identity evidence should have been suppressed due to the egregious government conduct in violation of the Fourth Amendment.  *Id.*, Pet. for Writ of Habeas Corpus, March 23, 2016.

On March 29, 2016, the habeas corpus hearing was held, at which the state court (1) denied the petition, (2) denied Webb's oral motion to stay the extradition warrant because Webb was able to file such a motion, and (3) set a Review Hearing for April 28, 2016.  *Id.*, Minute Entry, Habeas Corpus Hr'g, March 31, 2016.

On March 30, 2016, Webb filed an appeal of the denial of the petition.  *Id.*, Notice of Appeal, March 30, 2016.

Also on March 30, 2016, Webb filed a written motion to stay the warrant process so as to permit an appeal on the habeas petition.  *Id.*, Motion to Stay, March 30, 2016.

/////

---

[7] Webb did not respond to or dispute Napier's Statement of Facts, and the state court records set out the timeline of events.

[8] The date the Special Action was filed cannot be determined from the trial court record.

On April 4, 2016, the Court of Appeals declined jurisdiction over the Special Action. *Id.*, Appeals Court Order, April 4, 2016.

On April 7, 2016, the County Sheriff notified the demanding state that Webb was ready for transport. (Doc. 34 ¶ 15.)

On April 8, 2016, the state court, without explanation, denied Webb's motion to stay the warrant process. No. FW20150238-001, Criminal Ruling, April 8, 2016.

On April 12, 2016, Webb was extradited to Texas. (Doc. 34 ¶ 11.)

Thereafter, Webb's appeal was dismissed. (Doc. 19-1 at 129.)

Webb contends that the County Sheriff unlawfully extradited him because the Sheriff did not wait until the Court of Appeals ruled on his appeal. (Doc. 26 at 4.) As the Sheriff argues, however, there is nothing in the relevant Arizona statute that addresses appellate rights or confers a right to a stay of extradition pending appeal. (Doc. 33 at 6, citing Ariz. Rev. Stat. § 13-3850.) The statute requires only that the accused be provided reasonable time to file a writ of habeas corpus. Ariz. Rev. Stat. § 13-3850.

The Court finds no authority requiring the Arizona trial court to stay an extradition order until appeals are exhausted. Rather, there is at least one instance where the state court denied a stay of extradition, the prisoner was then extradited, and his pending appeal was dismissed as moot. *Johnson v. State*, No. 2 CA-HC 2014-0001, 2014 WL 6453882, at *1 (Ariz. Ct. App. Nov. 18, 2014) (after the prisoner's petition for writ of habeas corpus was denied, he filed an appeal and a motion to suspend enforcement of the extradition order; the trial court denied the motion to suspend enforcement of the order, the prisoner was extradited to Wisconsin, and his appeal was dismissed on the ground that it was rendered moot by his extradition). Other states have similarly recognized that when a person is extradited, a pending appeal of the denial of a petition for writ of habeas corpus is rendered moot. *See e.g.*, *Ex parte Stowell*, 940 S.W.2d 241, 242–43 (Tex. Ct. App. 1997) (the appellant's extradition to another jurisdiction rendered his appeal of the denial of habeas relief moot in this jurisdiction); *Commonwealth of Penn. v. Caffrey*, 508 A.2d 322, 323 (Pa. Super. Ct. 1986) ("the asylum state cannot review, on appeal, the

propriety of the denial of a writ of habeas corpus when the subject has already been taken to the demanding state"); *see also Artukovic v. Rison*, 784 F.2d 1354, 1355–56 (9th Cir. 1986) (a petition for habeas corpus is the only method to review an order certifying extradition, and an appeal from the denial of a petition for habeas corpus will become moot once the extradition is carried out); *but see Commonwealth of N. Mariana Islands v. Miura*, No. 2008-SCC-0028-CRM, 2010 WL 2889105, at *6 (N. Mar. I. July 22, 2010) (discussing N. Mar. I. Supreme Court Rule 23, which requires judicial authorization before a prisoner whose habeas proceeding is pending review can be transferred and finding that "a stay of extradition is proper when it prevents an extradition from denying persons the right of appeal by rendering it moot").

The record shows that Webb was provided time to file a petition for writ of habeas corpus, which he did, and the court ruled on it and denied it. Webb also had the opportunity to file a Special Action and move for a stay of the extradition process pending an appeal of the denial. The Sheriff points out that after the trial court denied Webb's motion to stay, under the Arizona Rules of Civil Appellate Procedure, Webb could have requested a stay from the court of appeals pending appeal, but he did not do so. (Doc. 33 at 7.) *See* ARCAP 7(c). Absent a court order to stay the extradition process, the Sheriff was obligated to deliver Webb pursuant to the warrant. *See* No. FW20150238-001, Minute Entry, Habeas Corpus Hr'g, March 29, 2016; *Puerto Rico v. Branstad*, 483 U.S. 219, 226 (1987) ("the commands of the Extradition Clause are mandatory, and afford no discretion to the executive officers or courts of the asylum State"). The timeline shows that the County Sheriff notified Texas that Webb was ready for transport on April 7, 2016, which was arguably premature because the trial court had not yet ruled on Webb's motion to stay the extradition process. Nonetheless, the motion to stay was denied the following day, and Webb was not extradited until April 12, 2016. The Sheriff's early notification was therefore harmless and did not rise to a statutory or due process violation.

Accordingly, there is no genuine issue of material fact as to whether the Sheriff violated Webb's statutory or due process rights. The Court will grant the Sheriff's Cross-Motion and deny Webb's Motion as to this Count.

**IT IS ORDERED** that Defendant South's Motion for Extension to File Video (Doc. 44) is **granted**.

**IT IS FURTHER ORDERED** that Defendant South's Motion for Summary Judgment (Doc. 21) is **granted**; Count I is dismissed with prejudice.

**IT IS FURTHER ORDERED** that Plaintiff Webb's Motion for Summary Judgment (Doc. 26) is **denied**.

**IT IS FURTHER ORDERED** that Defendant Sheriff Napier's Cross-Motion for Summary Judgment (Doc. 33) is **granted**; Count IV is dismissed with prejudice.

**IT IS FURTHER ORDERED** that Defendant South's Motion for Ruling (Doc. 42) and Sheriff Napier's Motion for Ruling (Doc. 45) are **granted**.

**IT IS FURTHER ORDERED** that the Clerk of Court must enter judgment accordingly and terminate this action.

Dated this 1st day of November, 2017.

_____
Honorable David C. Bury
United States District Judge